UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

AHMED S. SALEM                                CIVIL ACTION

VERSUS                                        NO:    17-11646

MONSANTO COMPANY

ORDER

Before the Court is the Defendant, Monsanto Company's **Partial Motion to Dismiss (R. Doc. 8)**. The motion is opposed. R. Doc. 14. A reply to the opposition was also filed with the Court's leave. R. Doc. 23. The motion was heard on the briefs.

I.  **Background**

The instant action was filed by the Plaintiff, Ahmed S. Salem ("Salem" or "Plaintiff"), a Process Engineer employed by Monsanto Company ("Monsanto" or "Defendant") alleging violations of the ADA Amendment Act of 2008, the Family and Medical Leave Act, and Title VII of the Civil Rights Act. R. Doc. 1. Monsanto is a chemical company that operates a facility in Luling, Louisiana. *Id.* at p. 2. The Plaintiff worked for Monsanto for over four years at the time of his discharge in April 2016. He alleges that he had a good work history up until the time when (1) he needed to return to Egypt to care for his father and (2) he began experiencing depression, a disability.

Salem alleges that at the end of 2015 he learned that his father, who lives in Egypt, was suffering from a life-threatening illness which required him to travel to Egypt in December of 2015 to care for his father. He alleges he requested and was granted an additional few days to remain in Egypt with his family. *Id.* Salem alleges that upon returning from Egypt in early January of 2016 he suffered from a "deep depression." The Plaintiff argues that he went back to work and during

this time suffered from insomnia and lack of ability to concentrate at work, which he attributed to depression, stress, and anxiety. *Id.*

Salem alleges that on or about January 7, 2016, he visited Kristopher Steffen of Monsanto's Human Relations at his office about the depression, stress, and anxiety of his father's illness and his being located far away from his father. The Plaintiff contends that at this meeting he asked how he could return to Egypt to care for his father without losing his job at Monsanto. *Id.* According to Salem, shortly after the meeting he was informed by Steffen that he should see a doctor about his medical condition, which if verified, would allow Salem to apply for short-term disability or that Salem could apply for FMLA leave without seeing a doctor. *Id.*

The Plaintiff alleges that he elected to see a doctor to get medical help and on January 11, 2016 he visited Dr. Jackson Hatfield who diagnosed him with acute depression, prescribed an anti-depressant, and recommended that Salem not return to work for eight weeks or until March 7, 2016. *Id.* Salem contends that after seeing the doctor, and pursuant to Steffen's instructions, he submitted a claim for short-term disability benefits to Kristi Flann, Disability Plan Specialist at Sedgwick Claims Management Services, Inc. under Monsanto's disability insurance and that both Jim Yarborough, his supervisor, and the Human Relations Department approved of Salem's leave of absence while his short-term disability claim was pending. *Id.* at pp. 3-4. Salem argues that he knows many employees of Monsanto who have gone out on short-term disability and he discussed the procedure with Jessica Gautier, a mechanical engineer, whose national origin is that of the United States, about her experience of being on short-term disability for five-months. *Id.* at p. 4.

The record indicates that after his January visit with Monsanto's Human Resources he returned to Egypt to care for his father. There is no indication of the exact date which Salem left the country to travel to Egypt. He contends that during the first week of February 2016 he was

performing caretaking duties in Egypt when he was contacted by Sedgwick Claims Management, a non-party claims administrator, who requested that he provide a second medical opinion on his disability. *Id.* Salem argues that he was out of the country and had been informed by his physician, Dr. Hatfield, that in other cases Sedgwick had approved disability claims based on his recommendation. *Id.* at pp. 4-5. The Plaintiff alleges that Sedgwick insisted he was to provide a second medical opinion from a U.S. psychiatrist, which he states was impossible because he was in Egypt. Plaintiff states that his short-term disability benefits were denied on February 5, 2016. *Id.* at p. 5.

After his short-term disability claim was denied the complaint suggests that Salem stayed in contact with his supervisor at Monsanto. *Id.* at p. 5. As a result, on March 24, 2016, he was advised by Kristopher Steffen of Monsanto's Human Resources that it was his responsibility to contact Monsanto's medical department and begin the FMLA application process. *Id.* Salem began the FMLA process in March and was referred to Danielle Breaux, a Medical Administrative Assistant, to complete the necessary paperwork, which he did. *Id.* Plaintiff further states that on April 5, 2016 he was informed by Breaux that all the forms necessary for the FMLA leave application had been received. *Id.*

On April 14, 2016, the Plaintiff contends that he was informed by Human Resources that his FMLA leave was approved and this his 12 weeks of FMLA leave ended on April 8, 2016, three days after the application was received.[1] *Id.* Plaintiff contends that he was informed that because his FMLA leave was exhausted he would be terminated if he did not return to work by April 18, 2016, ten days after his FMLA expired. *Id.* However, because he did not learn of this deadline until April 14, 2018 he was given only 4 days to return from Egypt. Salem alleges that he was

---

[1] Based upon the alleged FMLA date given his FMLA leave would have begun on January 15, 2016.

3

unable to substitute care for his father, make travel arrangements from Egypt to Louisiana, and travel in such a short-period of time. *Id.* at pp. 5-6. Salem believed and communicated with Monsanto's Human Resources that he should be given additional time to return to the United States. Instead, he was terminated on April 18, 2016.

Salem filed a charge of discrimination with the EEOC on November 7, 2016 and filed the instant lawsuit within ninety (90) days of receiving his right to sue letter. *Id.* Salem contends that: (1) Monsanto terminated him because he took FMLA leave; (2) other Monsanto employees were allowed to take leave and return to work; (3) Monsanto breached its duty to provide written notice of his obligations and the consequences of failing to comply; (4) Monsanto violated the Americans with Disabilities Act because it failed to make a reasonable accommodation for his disability, depression, and treated others more favorably than he; and (5) Monsanto terminated him because of his national origin.

Monsanto seeks a dismissal of the national original claim arguing that: (1) there is no link between Salem's national origin and termination; (2) the alleged comparators listed in the amended complaint were not similarly situated employees because the employer's action must be taken in nearly identical circumstances, the comparator employees must have held the same job, supervisor, or their employment status determined by the same person; and (3) Salem's alleged comparators who were non-Egyptian engineers who were granted leave due to family issues and allowed to return is deficient such that the national origin discrimination claim should be dismissed. R. Docs. 8, 23.

Salem filed an opposition to the motion to dismiss the national origin claim because other employees not in his protected class were treated more favorably for failing to timely return from FMLA leave and the reason for termination, Salem had exhausted his leave, is a pretext for

discrimination. R. Doc. 14, pp. 1-2. The Plaintiff argues that these factual allegations support his national origin discrimination claim. R. Doc. 14. He argues that the comparators he identified are adequate because they are non-Egyptian engineers who had family issues, were granted four-to-five months of leave, and allowed to resume their employment when Salem was not. *Id.* at pp. 4-5.

## II. Standard of Review

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005). The allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

The Federal Rules of Civil Procedure permit a defendant to seek a dismissal of a complaint based on the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *See Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). A court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

A legally sufficient complaint must establish more than a "sheer possibility" that the plaintiff's claim is true. *Iqbal*, 556 U.S. at 678. It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Id.* In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal relevant evidence of each element of the plaintiff's claim. *Lormand*, 565 F.3d at 257. The claim must be dismissed if there are insufficient factual allegations to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007). Motions to dismiss under Rule 12(b)(6) "are viewed with disfavor and are rarely granted." *Lormand*, 565 F.3d at 232 (citing *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005)).

### III. <u>Analysis</u>

Monsanto argues that the Plaintiff's allegations in this case do not raise the purported right to relief above the speculative level with respect to the national origin claim. Monsanto argues that the Plaintiff's own allegations would tend to counter any discriminatory intent based on national origin. It also argues that the Plaintiff's allegations concerning purported similarly situated employees or comparators fail to state a plausible claim and fail to create a plausible link between national origin and his termination.

The Defendant argues that the comparators that Plaintiff offers were not similarly situated because Fifth Circuit law requires that when using a fellow employee as a comparator the employment action to be taken under nearly identical circumstances when the employees being compared: (1) held the same job or responsibilities; (2) shared the same supervisor or had employment status determined by the same person; and (3) have essentially comparable violation

histories. Monsanto contends that the allegations that the two comparators were non-Egyptian engineers, were allowed to leave due to family issues, and permitted to return to work is insufficient to raise an inference that Plaintiff was treated less favorably because he is Egyptian.

Monsanto argues this is insufficient because: (1) the comparators held different positions; (2) there are no allegations that the comparators had the same supervisor or the decision to return to work was made by the same person; and (3) there is no indication what type of leave the purported comparators used or whether they had exhausted FMLA leave. Monsanto further contends that it is Plaintiff's own conduct that accounts for his difference in treatment and there is no presumed inference of national origin discrimination because the employment actions were not taken under nearly identical circumstances. Defendant argues that Plaintiff has failed to produce a single citation to support that the comparators are proper and merely alleging that the comparators were similarly situated with Salem does not make it so. Further, they argue Salem was not treated less favorably than these comparators based on his allegations that he was granted four months leave for family reasons and given the opportunity to return to work.

Salem contends that the comparators he identified are adequate because they are non-Egyptian engineers who had family issues, were granted four-to-five months of leave, and allowed to resume their employment when Salem was not.

Title VII makes it unlawful for an employer "to fail to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's…national origin." 42 U.S.C.A. § 2000e-2(a). A plaintiff may prove a claim of discrimination either by direct or circumstantial evidence. *McCoy v. Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). As a general matter, Title VII national origin based discrimination claims are evaluated under the *McDonnell*

*Douglas v. Green* burden-shifting framework when attempting to be proven by circumstantial evidence. *Buisson v. Board of Sup'rs of Louisiana Community and Technical College System*, 592 F. App'x 237, 242 (5th Cir. 2015) (citing *McDonnell Douglas v. Green*, 411 U.S. 792, 802-04 (1973)). In order to establish a *prima facie* case the plaintiff must establish that: (1) he is a member of a protected group; (2) was qualified for the position at issue; (3) suffered an adverse employment action, such as termination of his employment; and (4) was replaced with someone outside his protected group or was treated less favorably than other similar situated employees outside the protected group. *See Buisson*, 595 F. App'x. at 243; *McCoy*, 492 F.3d at 556.

Monsanto's motion to dismiss does not contend that Salem was not a member of a protected group, qualified for his job, or that he was jot terminated. Rather, the argument is that Salem has not alleged he was replaced by someone outside his protected group and the alleged similarly situated comparator employees pled to show Salem was treated less favorably are deficient.

The Title VII the "similarly situated" prong requires a claimant to "identify at least one coworker outside of his protected class who was treated more favorably 'under nearly identical circumstances.'" *Alkhawaldeh v. Dow Chemical Co.*, 851 F.3d 422, 426 (5th Cir. 2017) (quoting *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009)). The employment action being evaluated between the claimant and comparator "will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories. And, critically, the plaintiff's conduct that drew the adverse employment decision must have been nearly identical to that of the proffered comparator who allegedly drew dissimilar employment decisions." *Lee*, 574 F.3d at 260 (internal quotations and citations omitted).

Salem has pled that Jonaris Estupinan was an electrical engineer in the DSIDA department, left the United States for family reasons, was granted leave for more than four months, was allowed to return to work, and is not Egyptian.

He further pled that Jessica Gautier is a mechanical engineer in the Utilities department, who is not Egyptian, was granted leave from work for more than five months for family issues, worked in the same department, and was allowed to return to work.

The Court finds that Salem has pled allegations, accepted as true, that do not raise his right to relief above a speculative level. A review of the Salem's pleadings shows that he was a different "type" of engineer than either of the comparators. Salem has pled he was a process engineer, Estupinan was a mechanical engineer, and Gautier was a mechanical engineer. Estupinan, according to Salem's amended complaint, was part of an entirely different department. Salem has not pled that these individuals held the same or similar responsibilities, shared the same supervisor, or the ultimate decision maker regarding the employment status was the same.

Salem also alleges that his termination was pre-textual as he was Egypt and given four days to return to work, communicated he was unable to, and then terminated when he did not show up. With respect to both Gautier and Estupinan, Salem has pled that they were both allowed to return to their employment. Salem's pleading also indicates that he was allowed to return to his employment as well. Salem has pled that Monsanto indicated his leave had expired and he was expected to return to work at which time he did not. There is no indication as to what type of leave the comparators had taken and whether or not they were provided time after their leave was expired to return to work. Salem was not treated less favorably based on his own pleading because he was allowed to return to his employment.

The Court, after reviewing the pleading in the instant matter, finds that the allegations of Salem, accepted as true, do not raise the right to relief above a speculative level. *See Lormand*, 565 F.3d at 257. As a result, the Court finds that the partial motion to dismiss Salem's Title VII claim of national origin discrimination must be granted.

**IV.	Conclusion**

Accordingly,

**IT IS ORDERED** that the Defendant's **Partial Motion to Dismiss under Rule 12(b)(6) (R. Doc. 8)** is **GRANTED.**

New Orleans, Louisiana, this 18th day of June 2018.

_____
**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**